IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**SHAWNA PAULEY, parent and natural
guardian of RILEY JOHNSON, a minor,**

      **Plaintiff,**

v.                                                     **Case No.: 3:12-cv-08558**

**UNITED STATES OF AMERICA,**

      **Defendant.**

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Motion to Prohibit Plaintiffs from Calling Physicians and Nurses Who Rendered Care to Plaintiffs at CAMC as Witnesses at Trial, or in the Alternative to Compel Plaintiffs to Disclose the Identities of Those Physicians and Nurses Who Rendered Care at CAMC to the Plaintiffs Who Will Be Called as Witnesses at Trial by the Plaintiffs and for Other Relief. (ECF No. 70). Plaintiffs have filed a response in opposition to the motion, (ECF No. 74), and Defendant has provided supplemental arguments in support of its motion. (ECF No. 75). In addition, the undersigned has conducted telephonic hearings on the motion, and the issues are ready for disposition.

As set forth below, and for the reasons that follow, the Court **GRANTS, in part,** and **DENIES, in part,** Defendant's motion. The Court **GRANTS** Defendant's motion to reopen discovery for the limited purpose of allowing the United States to depose two

1

specific health care providers from CAMC who may be called by Plaintiff as witnesses at trial, but **DENIES, without prejudice,** Defendant's motion to prohibit the testimony of these specific health care providers. Furthermore, in light of Plaintiff's agreement to withdraw the remaining CAMC health care providers as potential witnesses, the Court **GRANTS** Defendant's motion to prohibit their testimony at trial.

I.  Relevant Background

This action arises from medical care rendered by employees of the Family Health Care Center, a federally operated clinic located in Putnam County, West Virginia. Plaintiff, Shawna Pauley, claims that employees of the Center were negligent and reckless in their management of her labor and delivery, causing permanent neurological injury to her then unborn child, Riley Johnson.

Riley was born on August 1, 2011 at Charleston Area Medical Center ("CAMC"), where she remained until August 26, 2011. Riley was then transferred to Cabell Huntington Hospital, and received care and treatment at that facility until her discharge on September 20, 2011 with a diagnosis of hypoxic ischemic encephalopathy. Since her birth, Riley has required a significant amount of medical care, which she has received at multiple facilities and from numerous providers.

Pursuant to an order of this Court, the parties were required to file initial disclosures under Federal Rule of Civil Procedure 26(a)(1)(A) on May 13, 2013. Rule 26(a)(1)(A) provides, in relevant part, that each party must provide the other parties with "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." In her disclosure, Plaintiff listed four individuals by name.

She also listed "physicians, nurses, medical personnel, and/or personnel" of Family Care Health Center, and "[o]ther physicians, nurses, medical personnel who provided and/or presently provided [sic] care to Riley Johnson." (ECF No. 70-1 at 2). Plaintiff reserved her right to supplement the disclosure as information became available through discovery.

On May 9, 2013, Defendant served Plaintiff with written discovery, including an interrogatory that asked Plaintiff to "[s]tate the names, address [sic], telephone numbers of all persons whom the plaintiff intends to call as witnesses at trial." (ECF No. 70-2 at 4). On June 11, 2013, Plaintiff responded to the interrogatory by identifying six individuals by name, and by adding as a group, "[v]arious physicians, nurses, health care personnel and/or medical experts who were involved in the care and/or treatment of Riley Johnson." (*Id.* at 5). Plaintiff again reserved the right to supplement her response after further discovery.

Defendant contends, and Plaintiff apparently concedes, that the next time she took steps to supplement her Rule 26(a)(1)(A) initial disclosures and her response to the interrogatory requesting trial witnesses was on March 4, 2014, seventeen days before expiration of the discovery deadline. At that time, Plaintiff advised Defendant by electronic mail that she was "thinking of calling at trial" physicians and/or nurses from CAMC that had treated Riley and Shawna Pauley during the August 2011 admission. Plaintiff made it clear that she did not intend to speak with or depose these potential witnesses prior to trial, but wanted to reserve her right to offer their testimony at trial. (ECF No. 70-3 at 4-5). In response, Defendant indicated, "[w]hether you depose them or not and/or whether you talk to them or not prior to trial, the United States does have a right to know which of them you intend to call as witnesses so that the United States can

3

depose them prior to trial." (*Id.* at 4). Plaintiff did not specify which health care providers would be called as witnesses; accordingly, Defendant filed the instant motion. On March 21, 2014, the final day allotted for discovery, Plaintiff filed a supplemental Rule 26(a)(1)(A) disclosure, listing thirty-five (35) medical providers by name and adding a catchall category of "[a]ny health care provider not named whose reports and/or records have been used in a deposition or other discovery." (ECF No. 73-2).

On April 1, 2014, the undersigned conducted a telephonic hearing with the parties to address the motion and the newly disclosed witnesses. Defendant argued that all of the individuals named in Plaintiff's supplemental disclosure should be prohibited from testifying at trial because Plaintiff had failed to timely supplement her initial disclosures and her response to Defendant's interrogatory seeking the identity of trial witnesses. Defendant emphasized that trial was scheduled to begin in May, and the supplement was not served until the final day of discovery.

Plaintiff responded that she had adequately identified the individuals in her initial disclosures and discovery response when she indicated that she might call Riley Johnson's medical providers as potential witnesses. Plaintiff pointed out that both parties had access to the medical records and were equally aware of the identities of the medical providers. Plaintiff also argued that even if the Court found her initial disclosures to be inadequate, her recent disclosure cured the problem because it specifically identified the medical providers to be called as witnesses, and it was timely filed. According to Plaintiff, one of her expert witnesses, Dr. Karotkin, was deposed on March 20, 2014. Based upon Dr. Karotkin's testimony, Plaintiff anticipated that Defendant would attempt to supplement its experts' opinions; therefore, she disclosed the CAMC witnesses solely to address what she expected would be Defendant's

4

supplemental expert opinions. Since Plaintiff could not anticipate before Dr. Karotkin's deposition that Defendant would supplement its expert opinions, she could not have identified the recently disclosed witnesses any sooner. Plaintiff indicated that she would agree to withdraw all of the CAMC witnesses if Defendant agreed not to supplement its expert opinions. Defendant responded that it needed additional time to allow it experts to review the recent testimony before making that determination.

Accordingly, after hearing from the parties, the undersigned instructed Defendant to determine what, if any, supplemental expert opinions it intended to offer and to promptly provide them to Plaintiff. If supplemental opinions were offered, Plaintiff was instructed to identify which of the thirty-five CAMC health care providers she intended to call as witnesses at trial. A second telephonic conference call was scheduled on April 9, 2014 to determine the status of these issues. On April 8 and 9, 2014, Defendant served Plaintiff with supplemental expert opinions.

During the telephonic status conference on April 9, 2014, Plaintiff advised that, based upon Defendant's supplemental expert opinions, Plaintiff *might* call two CAMC physicians as witnesses at trial, including Dr. F. Garmany and Dr. James Lowery. Plaintiff agreed to voluntarily withdraw as witnesses the remaining CAMC health care providers identified in her disclosure filed on March 21, 2013. (ECF No. 73-2). According to Plaintiff, Dr. Garmany and Dr. Lowery would not be called to offer expert opinions; instead, they would be called solely as fact witnesses to testify regarding the information contained in their medical records.

Defendant then reasserted its objection to the addition of these two witnesses on the ground that they were not disclosed in a timely fashion. Defendant contended that its supplemental expert opinions did not contain substantive modifications or additions.

5

Instead, the supplementation merely responded to specific issues raised by Plaintiff's expert witness in his recent testimony. Therefore, Plaintiff should be prohibited from introducing new evidence or opinions through the testimony of Dr. Garmany and Dr. Lowery.

## II. Discussion

Federal Rule of Civil Procedure 37(c) sets forth the penalties associated with the failure to disclose or supplement information required to be provided to an opposing party under Federal Rule of Civil Procedure 26(a), and for the failure under Federal Rule of Civil Procedure 26(e) to supplement or correct a response to an interrogatory that the answering party learns is in some material respect incomplete or incorrect. Rule 37(c)(1) provides, in relevant part, that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." District courts have broad discretion in determining whether a failure to disclose is substantially justified or harmless, but should consider the following five factors in making that determination:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Southern States Rack and Fixture, Incorporated v. Sherwin-Williams Company,* 318 F.3d 592, 597 (4th Cir. 2003). The basic purpose of Rule 37(c)(1) is to prevent unfair surprise and prejudice to the party against whom the belated evidence is offered. *Id.* at 596.

In regard to the first factor, Plaintiff argues that Defendant cannot reasonably

6

claim surprise because it has long been in possession of the relevant medical records and fully aware of the identities of the treating health care providers. While Plaintiff's statements may be correct, knowing the names of individuals who treated Riley Johnson is not the same as knowing which of those individuals will be offered as witnesses at trial. As previously stated, Riley received a significant amount of medical care from many different health care providers. Defendant was entitled under Rule 26(a)(1)(A) to know, on a timely basis, which of the providers might be called to testify on behalf of Plaintiff and the subject matter of their testimony. Similarly, Defendant served an interrogatory specifically asking for the name, address and telephone number of each trial witness to be called by Plaintiff, and none of the thirty-five individuals identified on the recent disclosure was included in her answer. Nevertheless, Plaintiff has now limited her additional witnesses to Dr. Garmany and Dr. Lowery. While some surprise still remains in that they were not specifically identified until after the close of discovery, the prejudice flowing from the surprise has been substantially reduced.

      Second, the undersigned must consider Defendant's ability to cure the prejudice created by the surprise. Certainly, having access to the medical records provides Defendant with some remedy; particularly, in light of Plaintiff's representation that she intends to confine her questioning of the physicians to their medical records. Defendant has ample time to request *in limine* rulings from the District Judge to insure that the witness testimony is appropriately limited. Moreover, Defendant is granted leave to depose Drs. Garmany and Lowery beyond the discovery deadline. There remains sufficient time before trial to arrange for the depositions, and for Defendant's experts to closely review the treatment records of Drs. Garmany and Lowery. Thus, Defendant should be able to cure any prejudice associated with the surprise.

When examining the extent to which allowing the evidence would disrupt the trial, the undersigned finds that allowing the witnesses should not significantly disrupt the proceedings, assuming that Drs. Garmany and Lowery are available for deposition before trial. Issues regarding the scope of their testimony may be addressed at the pretrial; therefore, the delay in their disclosure has likewise not negatively affected the pretrial proceedings.

As far as the importance of the evidence, it is generally helpful to have treating physicians testify in person regarding their medical care and to interpret their own medical notations, although it is unlikely that Dr. Garmany or Dr. Lowery possess significant information that is not documented in the medical record. Therefore, this factor is neutral.

Finally, Plaintiff claims that she only recently identified Dr. Garmany and Dr. Lowery as potential trial witnesses because she only recently received Defendant's supplementation of expert witness opinions.[1] Plaintiff contends that in these latest opinions, Defendant raised new issues regarding prolonged pulmonary hypertension and nucleated red blood cells. These opinions place more emphasis on the treatment provided by Drs. Garmany and Lowery; thus, their testimony may now be needed. The docket reflects that Defendant has filed second and third supplemental expert witness disclosures within the last few days. Although Defendant argues that these disclosures do not contain new opinions, the undersigned is not in a position to reach such a

---

[1] The undersigned has not overlooked that the first mention of adding CAMC witnesses occurred on March 4, 2014, which was sixteen days before Dr. Karotkin's deposition; thus, suggesting that the CAMC witnesses may originally have been added for reasons other than Defendant's supplemental expert opinions. Nonetheless, Plaintiff did agree at the initial hearing to withdraw all of the CAMC witnesses if Defendant agreed that it would not offer any supplemental expert opinions. Consequently, the more recent identification of Dr. Garmany and Dr. Lowery appears to be specifically in response to Defendant's supplemental expert opinions.

conclusion because the opinions have not been submitted for review. Therefore, at this juncture, the undersigned finds that Plaintiff has stated a reasonable justification for her belated addition of Drs. Garmany and Lowery as witnesses at trial. However, in the event that Defendant is unable to schedule the depositions of Drs. Garmany and/or Lowery, **and** Plaintiff has secured the physician's appearance at trial, Defendant may renew its motion to prohibit the testimony under Rule 37(c)(1), or seek some other form of *in limine* relief from the District Judge.

The Clerk is instructed to provide a copy of this Order to counsel of record and any unrepresented party.

**ENTERED:** April 11, 2014

_____
Cheryl A. Eifert
United States Magistrate Judge